Matthew C. Helland (SBN 250451)
helland@nka.com
NICHOLS KASTER, LLP
One Embarcadero Center, Suite 720
San Francisco, CA 94111
Tel: (415) 277-7235; Fax: (415) 277-7238

E. Michelle Drake (MN Bar No. 0387366)*
emdrake@bm.net
John G. Albanese (MN Bar No. 0395882)*
jalbanese@bm.net
BERGER & MONTAGUE, P.C,
100 South Fifth St.
Suite 1900
Minneapolis, MN 55402
Tel: (215) 875-3000; Fax: (215) 875-4604
*admitted pro hac vice

Joseph A. Fitapelli*
jfitapelli@fslawfirm.com
Nicholas P. Melito*
nmelito@fslawfirm.com
FITAPELLI & SCHAFFER
475 Park Avenue South, 12th Floor
New York, New York 10016
Tel: (212) 300-0375; Fax: (212) 481-1333
*pro hac vice motion forthcoming

*Attorneys for Plaintiffs and the Proposed Classes*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORRETTA NESBITT, JAMAL ST. LOUIS, and ARIAN NUNEZ individually and as representatives of the classes,<br><br>                                    Plaintiffs,<br><br>v.<br><br>POSTMATES INC.,<br><br>                                    Defendant. | Case No.: 3:15-cv-04052-VC<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>(1) Failure to Provide a Stand-Alone Disclosure in Violation of 15 U.S.C. § 1681b(b)(2); and<br>(2) Failure to Provide Pre-Adverse Action Notice in Violation of 15 U.S.C. § 1681b(b)(3)<br><br>**DEMAND FOR JURY TRIAL** |

SECOND AMENDED COMPLAINT, Case No.3:15-cv-04052-VC

1        Plaintiffs Lorretta Nesbitt, Jamal St. Louis, and Arian Nunez ("Plaintiffs"), by

2 and through their attorneys, and on behalf of themselves, the Putative Classes set forth

3 below, and in the public interest, bring the following class action Complaint against

4 Defendant Postmates Inc. ("Defendant") pursuant to the federal Fair Credit Reporting

5 Act ("FCRA").

6                            **INTRODUCTION**

7        1.      This consumer class action is brought under the FCRA against a company

8 who routinely and systematically violates the FCRA's basic protections by failing to

9 provide required disclosures prior to procuring background reports on applicants and

10 employees, and by failing to provide applicants and employees with pre-adverse action

11 notice and a copy of the consumer report prior to taking adverse action against them as

12 required by 15 U.S.C. § 1681b(b)(3).

13        2.      As Defendant's practices were routine and systematic, Plaintiffs assert

14 claims for damages on behalf of themselves and a class of similarly situated individuals

15 on whom Defendant caused a consumer report to be procured without first providing

16 required disclosures, as well as a class of similarly situated individuals against whom

17 Defendant took adverse action prior to providing them with pre-adverse action notice and

18 a copy of their consumer report.

19                       **THE PARTIES**

20        3.      Plaintiff Lorretta Nesbitt is an adult resident of Las Vegas, Nevada.

21        4.      Plaintiff Jamal St. Louis is an adult resident of Brooklyn, New York.

22        5.      Plaintiff Arian Nunez is an adult resident of Union City, New Jersey.

23        6.      Defendant Postmates, Inc. is a corporation that provides couriers who

24 "purchase and deliver goods from any restaurant or store in a city."

25 https://postmates.com/about (last visited February 23, 2016).  Defendant is headquartered

26 in San Francisco, California and currently offers services in over 70 cities throughout the

27 country.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURISDICTION AND VENUE**

7.      This Court has jurisdiction over Plaintiffs' claims under 28 U.S.C. §1441(a) and 28 U.S.C. § 1331 .

8.      Venue is proper in this District under 28 U.S.C. § 1441(a) and 28 U.S.C. § 1391(b) because this case was removed from San Francisco County Superior Court, a substantial part of the events giving rise to the claims occurred in this District, and Defendant is headquartered in this District.

**INTRADISTRICT STATEMENT**

9.      This case was removed from state court.  However, for purposes of assignment, pursuant to L.R. 3-2(c) and (d), this action is properly assigned to the San Francisco Division of the Northern District of California because a substantial portion of the events giving rise to the dispute occurred in San Francisco County.

**STATUTORY BACKGROUND**

10.      Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing.  Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

11.      While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.  15 U.S.C. § 1681.

12.      Congress was particularly concerned about the use of background reports in the employment context, and therefore defined the term "consumer reports" to explicitly include background reports procured for employment purposes.  *See* 15 U.S.C. § 1681a(d)(1)(B).

-3-

13.     Through the FCRA, Congress required employers disclose that a consumer report may be obtained for employment purposes before procuring the report.  15 U.S.C. § 1681b(b)(2)(A)(i).

14.     Specifically, Congress made it unlawful for an employer or prospective employer to "procure, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless …a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes."   15 U.S.C. § 1681b(b)(2)(A)(i) (emphasis added).   This requirement is frequently referred to as the "stand-alone disclosure requirement."

15.     Further, the FCRA requires that any person who uses a report for employment purposes must:

> before taking any adverse action based in whole or in part on the report. . .
> provide to the consumer to whom the report relates –
>     (a) a copy of the report; and
>     (b) a description in writing of the rights of the consumer under this
>     subchapter, as prescribed by the [Consumer Financial Protection]
>     Bureau under section 1681g(c)(3).

15 U.S.C. § 1681b(b)(3).

16.     The FCRA defines adverse action both as "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee" and as "any action taken or determination that is . . . adverse to the interests of the consumer."  *See* 15 U.S.C. §§ 1681a(k)(1)(B)(ii) and 1681a(k)(1)(B)(iv)(II).

17.     The pre-adverse action notification provision protects applicants and employees by "provid[ing] the consumer with knowledge of information the [consumer reporting agency] has reported about him or her that is going to result in adverse action in an employment context, affording the individual an opportunity to respond to it."  FTC Advisory Opinion to Leathers (Sept. 9, 1998), available at http://www.ftc.gov/policy/advisory-opinions/advisory-opinion-leathers-09-09-98; *see also*

-4-

1   *Moore v. Rite Aid Hdqtrs Corp,* No. CIV.A. 13-1515, 2015 WL 3444227, at *4 (E.D. Pa.

2   May 29, 2015) (citing *Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 848 F. Supp.

3   2d 532, 537 (E.D. Pa. 2012)) ("Section 1681b(b)(3)(A) thus requires an employer to

4   provide job applicants with their background report, summary of rights, and a 'real

5   opportunity' to contest the contents of the background report before the employer relies on

6   the report to take an adverse action against the applicant.").   This requirement is

7   particularly important "where the information contained in the report (such as a criminal

8   record) would automatically disqualify the individual from employment," so that the

9   consumer has a chance to address the information "in case the report is inaccurate."  FTC

10  Advisory     Opinion     to     Rosen,     (June     9,     1998),     available     at

11  http://www.ftc.gov/policy/advisory-opinions/advisory-opinion-rosen-06-09-98.

12          18.    Before they procure any background reports, users of consumer reports for

13  employment purposes must certify to the consumer reporting agency that they have

14  complied with the FCRA's disclosure provisions and will comply with its pre-adverse

15  action notice provisions. 15 U.S.C. § 1681b(b)(1).

16          19.    Many other provisions of the FCRA are also notice provisions.  *See* 15

17  U.S.C.  §  1681b(4)(B)  (notification  of  national  security  investigation);  §  1681c(h)

18  (notification of address discrepancy); § 1681d(a) (disclosure of investigative report); §

19  1681g (full file disclosure to consumers); § 1681k(a)(1) (disclosure regarding the use of

20  public record information); § 1681h (form and conditions of disclosure); § 1681m(a)

21  (notice of adverse action).

22          20.    Like the other notice provisions in the FCRA, the stand-alone disclosure

23  provision puts consumers on notice that a report about them may be prepared, and the pre-

24  adverse action notice provision puts them on notice that that report is being used to make

25  an adverse employment decision against them.  This knowledge enables consumers to

26  exercise a variety of other substantive rights conferred by the statute, many of which work

27  to ensure accuracy, confidentiality, and fairness.  15 U.S.C. § 1681c(a) (limiting temporal

28  scope of information that can be reported); § 1681e(b) (mandating that consumer

-5-

1  reporting agencies employ procedures to ensure "maximum possible accuracy" in

2  reports); § 1681k (requiring consumer reporting agencies that report public record

3  information to employers to either provide notice to the consumer that information is

4  being reported or have "strict procedures" to ensure that information is "complete and up

5  to date"); § 1681i (requiring that consumer reporting agencies investigate any disputed

6  information); § 1681g (requiring that consumer reporting agencies provide a complete

7  copy of the consumer's file to the consumer).

8      21.    Without a clear notice that a consumer report is going to be procured on

9  them, and without notice that that report is going to be used to take adverse action against

10  them, applicants are hindered in their ability to preserve their privacy, and to correct errors

11  or other problems with the reports.

12      22.    As discussed below, Defendant routinely violated the FCRA, and

13  consumers' rights, by failing to provide the required stand-alone disclosure before

14  procuring consumer reports for employment purposes and by failing to provide the

15  required pre-adverse action notice before taking adverse action against them.

16      **ALLEGATIONS RELATING TO PLAINTIFF NESBITT**

17      23.    On or around November 2014, Plaintiff Nesbitt applied to work as a

18  courier for Defendant in San Francisco using Defendant's on-line job application.

19      24.    Defendant requires its couriers to undergo and pass a background check.

20      25.    Specifically, Defendant procures background checks from Sterling

21  Infosystems, Inc. ("Sterling").

22      26.    Sterling is a consumer reporting agency because it sells background reports

23  for employment purposes.  *See generally* http://www.sterlingbackcheck.com/ (last visited

24  July 23, 2015).

25      27.    On or about November 20, 2014, Defendant procured Plaintiff Nesbitt's

26  background report from Sterling.

27      28.    Because the background report contained information regarding whether

28  Plaintiff Nesbitt had a criminal history and detailed Plaintiff Nesbitt's driving record, the

1  background check contained information regarding Plaintiff Nesbitt's "character, general
2  reputation, personal characteristics, or mode of living."  15 U.S.C. § 1681a(d).

3       29.    Because the background report contained information regarding Plaintiff
4  Nesbitt's "character, general reputation, personal characteristics, or mode of living," the
5  background check was a consumer report as defined under the FCRA.  15 U.S.C. §
6  1681a(d).

7       30.    Defendant failed to provide a stand-alone disclosure before procuring
8  Plaintiff Nesbitt's background check.

9       31.    Defendant presented Plaintiff Nesbitt with a "Background Check Consent
10 & Non-Disclosure Agreement" that Plaintiff Nesbitt was required to scroll through on
11 Defendant's website.  (Ex. 1.)  This document was the only document presented to
12 Plaintiff that pertained in any way to background checks.

13      32.    Online, the Background Check Consent & Non-Disclosure Agreement
14 appears on a single screen with a scroll bar that requires applicants to scroll through it to
15 read the entire agreement.

16      33.    A printed copy of the Background Check Consent & Non-Disclosure
17 Agreement showing all the verbiage that appears online is over 10 pages long.  (Ex. 2.)

18      34.    The Background Check Consent & Non-Disclosure Agreement is not a
19 stand-alone disclosure as required by the FCRA because it contains extraneous
20 information.

21      35.    First, as suggested by the title of the document, the Background Check
22 Consent & Non-Disclosure Agreement contains a lengthy non-disclosure agreement
23 wherein the job applicant purportedly agrees not to disclose "certain confidential technical
24 and business information."

25      36.    The non-disclosure agreement consists of 12 separately-numbered
26 paragraphs, and 3 sub-paragraphs sprawled over two and a half pages of text.

27      37.    The non-disclosure agreement has nothing whatsoever to do with the
28 procurement of a background check or consumer report.

-7-

38.     The Background Check Consent & Non-Disclosure Agreement also contains lengthy state-specific statements that are not an authorization for Defendant to procure a consumer report and are also not disclosures of the fact that a report may be procured for employment purposes.  Rather, these statements are extraneous information that renders any disclosure required under the FCRA not "clear and conspicuous" and also not a document consisting "solely" of the disclosure.  Accordingly, the inclusion of these statements on the Background Check Consent & Non-Disclosure Agreement violates the FCRA.

39.     Further, the Background Check Consent & Non-Disclosure Agreement contains a multiple paragraph description regarding the effect of an electronic signature and the procedure for obtaining a paper copy of the disclosure.

40.     The Background Check Consent & Non-Disclosure Agreement also impermissibly purports to have the signer "authorize, without reservation, any state or federal law enforcement agency or court, educational institution, motor vehicle record agency, credit bureau or other information service bureau or data repository or employer to furnish any and all information regarding me to STERLING and/or the COMPANY itself, and authorize STERLING to provide such information to the COMPANY."  This blanket authorization is not merely an authorization for Defendant to procure a consumer report; rather it purports to authorize far more than just the procurement of a consumer report.  Moreover, the blanket authorization for release of records is not a disclosure of the fact that a report may be procured for employment purposes.  Accordingly, the blanket authorization constitutes extraneous information.

41.     Accordingly, Defendant's Background Check Consent & Non-Disclosure Agreement does not satisfy the FCRA's the stand-alone disclosure requirement.

42.     On or around December 18, 2014, Defendant emailed Plaintiff Nesbitt that it would not be moving forward with her application "due to the results of your background and driving record check."  (Ex. 3.)

43.     That email also stated that "[i]f you would like a copy of your background check to verify the results, please let us know and we can provide you one." (*Id.*)

44.     Plaintiff Nesbitt responded on that same day stating that she "would like to verify the results." (*Id.*)

45.     Defendant responded that it would need her Social Security Number prior to sending a copy of her background check to "verify [her] identity." (*Id.*)

46.     Defendant's original December 18, 2014 email, where it informed Plaintiff that it was taking adverse action by not moving forward with her application, was not accompanied by a copy of her report and her rights as required by the FCRA.

47.     Further, by the time Defendant sent its December 18, 2014 email, it had already taken adverse action by not moving forward with Plaintiff Nesbitt's application, thus negating the pre-adverse action notice provision's purpose of putting consumers on notice that a decision is being based on a report, so that the consumer can ensure the report being used is accurate.

48.     Instead, Defendant put the onus on Plaintiff Nesbitt to respond and request a copy of her report, and made no reference to the copy of the summary of rights.

49.     Even after she requested a copy of her report, Defendant required identifying information before providing a copy of the report.

**ALLEGATIONS RELATING TO PLAINTIFF ST. LOUIS**

50.     On or around March 4, 2015, Plaintiff St. Louis applied to work as a courier for Defendant using Defendant's on-line job application.

51.     Plaintiff St. Louis was presented with the Background Check Consent & Non-Disclosure Agreement.  For the same reasons as stated above, the Background Check Consent & Non-Disclosure Agreement was not a stand-alone disclosure as required by the FCRA.

52.     After Plaintiff St. Louis filled out the application, Defendant procured Plaintiff St. Louis' background report from Sterling.

53.     Because the background report contained information regarding whether Plaintiff St. Louis had a criminal history and detailed Plaintiff St. Louis' driving record, the background check contained information regarding Plaintiff St. Louis' "character, general reputation, personal characteristics, or mode of living."  15 U.S.C. § 1681a(d).

54.     Because the background report contained information regarding Plaintiff St. Louis' "character, general reputation, personal characteristics, or mode of living," the background check was a consumer report as defined under the FCRA.  15 U.S.C. § 1681a(d).

55.     On or around March 15, 2015, Defendant emailed Plaintiff St. Louis that it would not be moving forward with his application "due to the results of your background and driving record check."  (Ex. 4.)

56.     That email also stated that "[i]f you would like a copy of your background check to verify the results, please let us know and we can provide you one."  (*Id.*)

57.     Defendant's March 15, 2015 email, where it informed Plaintiff St. Louis that it was taking adverse action by not moving forward with his application, was not accompanied by a copy of his report and his rights as required by the FCRA.

58.     Further, by the time Defendant sent its March 15, 2015 email, it had already taken adverse action by not moving forward with Plaintiff St. Louis' application, thus negating the pre-adverse action notice provision's purpose of putting consumers on notice that a decision is being based on a report, so that the consumer can ensure the report being used is accurate.

59.     Instead, Defendant put the onus on Plaintiff St. Louis to respond and request a copy of his report, and made no reference to the copy of the summary of rights.

## ALLEGATIONS RELATING TO PLAINTIFF NUNEZ

60.     On or around November 26, 2015, Plaintiff Nunez applied to work as a courier for Defendant using Defendant's online application.

61.     Plaintiff did not receive a compliant, stand-alone disclosure before Defendant procured his background check.  The disclosure, instead, contained extraneous

-10-

information unrelated to the fact that a consumer report would be procured for employment purposes.

62.    After Plaintiff Nunez filled out the application, Defendant procured Plaintiff Nunez's background report from Sterling.

63.    Because the background report contained information regarding whether Plaintiff Nunez had a criminal history and detailed Plaintiff Nunez's driving record, the background check contained information regarding Plaintiff Nunez's "character, general reputation, personal characteristics, or mode of living."  15 U.S.C. § 1681a(d).

64.    Because the background report contained information regarding Plaintiff Nunez's "character, general reputation, personal characteristics, or mode of living," the background check was a consumer report as defined under the FCRA.  15 U.S.C. § 1681a(d).

65.    On December 12, 2015, Defendant sent Plaintiff Nunez an email stating that it was "not proceeding with your application" and that "due to the volume of applicants, we cannot provide individual feedback to candidates." (Ex. 5.)  The email did not attach a copy of Plaintiff Nunez's consumer report or a summary of rights.

66.    Defendant later sent Plaintiff Nunez a letter dated December 14, 2015, stating that "information in a consumer report, if accurate, would prevent Postmates Inc. from extending you an employment offer."  The letter also enclosed a copy of Plaintiff Nunez's consumer report and a summary of rights.

67.    Defendant's original December 12, 2015 email, where it informed Plaintiff Nunez that it was taking adverse action by not moving forward with his application, was not accompanied by a copy of his report and his rights as required by the FCRA.

68.    Further, by the time Defendant sent its December 14, 2015 letter, it had already taken adverse action by not moving forward with Plaintiff Nunez's application, thus negating the pre-adverse action notice provision's purpose of putting consumers on notice that a decision is being based on a report, so that the consumer can ensure the report being used is accurate.

-11-

1

**DEFENDANT'S ILLEGAL BUSINESS PRACTICES**

2

69.     More than fifteen years ago, the Federal Trade Commission emphasized

3

that including extraneous information as Defendant did here is a violation of the FCRA.

4

*Letter from William Haynes, Fed. Trade Comm'n, to Richard W. Hauxwell, CEO Accufax*

5

*Div.* (June 12, 1998), available at 1998 WL 34323756 (explaining that "inclusion of a . . .

6

waiver in a disclosure form will violate Section [1681b(b)(2)(A)] of the FCRA, which

7

requires that a disclosure consist 'solely of the disclosure that a consumer report may be

8

obtained for employment purposes'").

9

70.     Moreover, the disclosure Defendant does provide is not compliant with the

10

FCRA's plain language because it includes, *inter alia*, extraneous information.  Numerous

11

courts have found the inclusion of this kind of information to violate the FCRA.  *See, e.g.*,

12

*Harris v. Home Depot U.S.A., Inc.*, No. 15-CV-01058-VC, ___ F. Supp. 3d ____, 2015

13

WL 4270313, at *2 (N.D. Cal. June 30, 2015) (holding that "a release of liability is

14

separate and distinct from the disclosure and authorization" and finding plausible

15

allegation that defendant "inserted this [release] into the disclosure form despite knowing

16

that to do so would violate the FCRA, or at least with reckless disregard for the FCRA's

17

requirements"); *Moore v. Rite Aid Hdqtrs Corp.*, No. CIV.A. 13-1515, 2015 WL 3444227,

18

at *12 (E.D. Pa. May 29, 2015) ("[T]he text of the statute and the available agency

19

guidance demonstrate[] that the inclusion of information on the form apart from the

20

disclosure and related authorization violates § 1681b(b)(2)(A)."); *Lengel v. HomeAdvisor,*

21

*Inc.*, No. 15-2198-RDR, ___ F. Supp. 3d ___, 2015 WL 2088933, at *8 (D. Kan. May 6,

22

2015) ("[I]t may be plausibly asserted that the standalone disclosure provision was

23

recklessly violated by the use of the Release form because it did not consist solely of the

24

disclosure that a consumer report may be obtained for employment purposes."); *Speer v.*

25

*Whole Food Mkt. Grp., Inc.*, No. 8:14-CV-3035-T-26TBM, 2015 WL 1456981, at *3

26

(M.D. Fla. Mar. 30, 2015) (finding that plaintiff had stated a claim wherein plaintiff

27

alleged that "the inclusion of the waiver along with the disclosure violated the FCRA");

28

*Milbourne v. JRK Residential Am., LLC*, ___ F. Supp. 3d ___, No. 3:12-cv-861, 2015 WL

-12-

1120284, at *6 (E.D. Va. Mar. 10, 2015) ("Thus, judging by the text of the statute alone, inclusion of a waiver within the document containing the disclosure would violate [the FCRA].");  *Dunford v. American Databank, Inc.,* 64 F. Supp. 3d 1378, 1388 (N.D. Cal. Aug. 12, 2014) (finding document that contained a liability release to "not consist solely of the disclosure because it added a paragraph exonerating [the defendant]"); *Avila v. NOW Health Grp., Inc.,* No. 14 C 1551, 2014 WL 3537825, at *2 (N.D. Ill. July 17, 2014) (finding inclusion of liability waivers to be "contrary to the express language of the FCRA, which requires a disclosure 'in a document that consists solely of the disclosure'"); *Singleton v. Domino's Pizza, LLC,* No. 12-cv-823, 2012 WL 245965, at *9 (D. Md. Jan. 25, 2012) ("[B]oth the statutory text and FTC advisory opinions indicate that an employer violates the FCRA by including a liability release in a disclosure document."); *Reardon v. ClosetMaid Corp.,* No. 2:-8-cv-01730, 2013 WL 6231606, at *10 (W.D. Pa. Dec. 2, 2013) (finding disclosure with liability waiver to be "facially contrary to the statute at hand, and all of the administrative guidance"); *Jones v. Halstead Mgmt. Co., LLC*, ___ F. Supp. 3d ___, No. 14-CV-3125 VEC, 2015 WL 366244, at *5 (S.D.N.Y. Jan. 27, 2015) (finding disclosure to not stand-alone when it included "information regarding time frames within which the applicant must challenge the accuracy of any report; an acknowledgement that 'all employment decisions are based on legitimate non-discriminatory reasons;' . . . and all sorts of state-specific disclosures"); *Martin v. Fair Collections & Outsourcing, Inc.*, No. GJH-14-3191, 2015 WL 4064970, at *4 (D. Md. June 30, 2015) (denying motion to dismiss where form "contain[ed] an authorization to obtain the report, information on when the applicant must challenge the accuracy of any report, an acknowledgement that the employee understands that 'all employment decisions are based on legitimate non-discriminatory reasons,' the name, address and telephone number of the nearest unit of the consumer reporting agency designated to handle inquiries regarding the investigative consumer report, and several pieces of state-specific information"); *Rawlings v. ADS Alliance Data Sys., Inc.*, No. 2:15-CV-04051-NKL, 2015 WL 3866885, at *6 (W.D. Mo. June 23, 2015) (stating "[w]here

-13-

the FCRA's language is clear, a dearth of guidance does not justify an objectively unreasonable interpretation of the statute" and denying motion to dismiss where form contained extraneous state law disclosures and plaintiff alleged that defendant "knowingly used a disclosure form . . . that contained extraneous information in violation of the FCRA"); *Miller v. Quest Diagnostics*, No. 2:14-cv-4278, ___ F. Supp. 3d ___, 2015 WL 545506, at *3 (W.D. Mo. Jan. 28, 2015) (finding "inclusion of the state-mandated consumer report information, administrative sections, ***and*** release language in the disclosure violates 15 U.S.C. § 1681b(b)(2)"); *see also E.E.O.C. v. Video Only, Inc.*, No. CIV. 06-1362-KI, 2008 WL 2433841, at *11 (D. Or. June 11, 2008) (granting summary judgment against the defendant-employer who made disclosure "as part of its job application which is not a document consisting solely of the disclosure.").

71.     School records, financial records, health records and public records, all of which fall within the broad language included in the Background Check Consent, are all legally protected from disclosure.  For example, the Family Educational Rights & Privacy Act, 20 U.S.C. § 1232g; 34 CFR Part 99, protects school records from disclosure absent consent from the student.  Similarly, the Gramm-Leach-Bliley Act requires financial institutions to safeguard nonpublic information at 15 U.S.C. §§ 6801-6809, and the Health Insurance Portability and Accountability Act, which sets forth its Privacy Rule at 45 CFR Part 160, and Subparts A and E of Part 164, requires certain entities to keep medical records private.  Most states also protect certain types of information relating to individuals from public disclosure.  For example, California's Financial Information Privacy Act, Cal. Fin. Code. § 4050, *et seq.*, is intended "to afford persons greater privacy protections than those provided in . . . the federal Gramm-Leach-Bliley Act." *Id*. § 4051(b).  Most states' government data laws are even more restrictive, and prohibit the disclosure of information on individuals held by many state agencies, like California's Information Practices Act of 1977, Cal. Civil Code § 1798, *et seq*.  The Background Check Consent & Non-Disclosure Agreement, however, purports to waive these rights

-14-

and would therefore operate to release these third parties from any liability for violating these privacy laws.

72.     Defendant knew that it had an obligation to provide a stand-alone disclosure before procuring a consumer report, and provide a copy of the report and a summary of rights before taking adverse action against Plaintiffs.

73.     The FCRA requires that, prior to procuring consumer reports, employers must certify to the consumer reporting agency that they will comply with the FCRA's stand-alone disclosure and pre-adverse action requirements.  *See* 15 U.S.C. § 1681b(b)(1).

74.     In accordance with their standard procedures, the consumer reporting agencies from which Defendant acquired consumer reports during the two years preceding the filing of the original complaint, including Sterling, required Defendant to certify that it would comply with the stand-alone disclosure provisions and pre-adverse action notice provisions of the FCRA.

75.     Before procuring Plaintiffs' reports, Defendant did, in fact, certify to Sterling and other consumer reporting agencies that it would comply with the stand-alone disclosure and pre-adverse action notice provisions of the FCRA.

76.     In its contract with Sterling, Defendant also agreed that before obtaining a consumer report, Defendant would provide a disclosure in writing to the consumer that a consumer report will be obtained for employment purposes, and that such disclosure will be made in a document consisting solely of the disclosure.

77.     Defendant did not procure Plaintiffs' reports in connection with any investigation of suspected misconduct relating to employment, or compliance with federal, state, or local laws and regulations, the rules of a self-regulatory organization, or any preexisting written policies of the employer.

78.     By systematically inserting extraneous information into Plaintiffs' and other class members' disclosures, Defendant willfully violated 15 U.S.C. § 1681b(b)(2)(A).

-15-

79.     In violation of 15 U.S.C. § 1681b(b)(3)(A), Defendant has taken adverse action against Plaintiffs and other class members, based on undisclosed consumer report information, without first providing Plaintiffs and other class members with a copy of the pertinent consumer reports and a summary of their rights, and without providing them a reasonable opportunity to correct any inaccuracies.

80.     As a result of Defendant's failure to comply with the FCRA's stand-alone disclosure requirement and pre-adverse action notice requirements, Plaintiffs Nesbitt, St. Louis, and Nunez experienced a concrete injury in the form of being deprived of information, namely a disclosure, a copy of their respective reports, and a summary of rights to which they were statutorily entitled.

## CLASS ACTION ALLEGATIONS

81.     Plaintiffs Nesbitt, St. Louis, and Nunez assert Count I on behalf of the proposed **Improper Disclosure Class** defined as follows:

> All individuals on whom Defendant obtained a consumer report for employment purposes on or after July 31, 2013 continuing through the date the class list is prepared.

82.     Plaintiffs Nesbitt, St. Louis, and Nunez assert Count II on behalf of the proposed **Pre-Adverse Action Notice Class** defined as follows:

> All individuals against whom Defendant took adverse action based in whole or in part on information contained in a consumer report on or after July 31, 2013 and continuing through the date the class list is prepared.

83.     This action is brought, and may properly be maintained, as a class action under Fed. R. Civ. P. 23(b)(3).

84.     Numerosity:   The Classes are so numerous that joinder of all class members is impracticable.  Defendant is a large company that has had hundreds, if not thousands, of job applicants in the past two years.

85.     Typicality:   Plaintiffs' claims are typical of the class members' claims. The FCRA violations committed by Defendant were committed pursuant to uniform

-16-

1   policies and procedures, and Defendant treated Plaintiffs in the same manner as other

2   class members in accordance with its standard policies and practices.

3       86.    Adequacy:  Plaintiffs will fairly and adequately protect the interests of the

4   Classes, and have retained counsel experienced in complex class action litigation.

5       87.    Commonality:  Common questions of law and fact exist as to all members

6   of the Classes and predominate over any questions solely affecting individual members

7   of the Classes, including without limitation:

8           (a) Whether Defendant's Background Check Consent & Non-Disclosure

9               Agreement violated the FCRA's stand-alone disclosure requirement;

10          (b) Whether Defendant violated the FCRA by taking adverse actions on

11              the basis of information in consumer reports, without first furnishing

12              copies of the reports and providing a summary of rights to the affected

13              persons;

14          (c) Whether Defendant's conduct was willful under FCRA; and

15          (d) The appropriateness and proper measure of statutory damages.

16      88.    Class certification is appropriate under Rule 23(b)(3) because questions of

17  law and fact common to the Classes predominate over any questions affecting only

18  individual members of the Classes, and because a class action is superior to other

19  available methods for the fair and efficient adjudication of this litigation.  Defendant's

20  conduct described in this Complaint stems from common and uniform policies and

21  practices, resulting in common violations of the FCRA.  Members of the Classes do not

22  have an interest in pursuing separate actions against Defendant, as the amount of each

23  class member's individual claim is small compared to the expense and burden of

24  individual prosecution, and Plaintiffs are unaware of any similar claims brought against

25  Defendant by any members of the Classes on an individual basis.  Class certification will

26  also obviate the need for unduly duplicative litigation that might result in inconsistent

27  judgments concerning Defendant's practices.  Moreover, management of this action as a

28  class action will not present any likely difficulties.  In the interests of justice and judicial

-17-

1   efficiency, it would be desirable to concentrate the litigation of all class members' claims

2   in a single forum.

3                                              **COUNT I**
                                        **15 U.S.C. § 1681b(b)(2)**
                              **Failure to Provide a Stand-Alone Disclosure**
4                   **On Behalf of all Plaintiffs and the Improper Disclosure Class**

5       89.     Defendant violated the FCRA by procuring consumer reports on Plaintiffs

6   and the Improper Disclosure Class members without making the stand-alone disclosure

7   required by the FCRA.  *See* 15 U.S.C. § 1681b(b)(2)(A)(i).

8       90.     Defendant acted willfully and in knowing or reckless disregard of its

9   obligations and the rights of Plaintiffs and the Improper Disclosure Class members.

10  Defendant's willful conduct is reflected by, among other things, the fact that it violated a

11  clear statutory mandate set forth in 15 U.S.C. § 1681b(b)(2)(A)(i), and that Defendant

12  certified that it would comply with 15 U.S.C. § 1681b(b)(2)(A)(i).  Further:

13          (a)    The stand-alone disclosure provision was enacted in 1996 and has

14                 been in force since Defendant's founding;

15          (b)    Defendant's conduct is inconsistent with the FTC's longstanding

16                 regulatory guidance, judicial interpretation, and the plain language

17                 of the statute;

18          (c)    Defendant repeatedly and routinely uses the same unlawful

19                 documents it provided to Plaintiffs with all of its applicants on

20                 whom it procured consumer reports;

21          (d)    Despite the pellucid statutory text and there being a depth of

22                 guidance, Defendant systematically procured consumer reports

23                 without first disclosing in writing to the consumer *in a document*

24                 *that consists solely of the disclosure*, that a consumer report may be

25                 obtained for employment purposes; and

26          (e)    By adopting such a policy, Defendant voluntarily ran a risk of

27                 violating the law substantially greater than the risk associated with

28

-18-

a reading that was merely careless.

91.     Plaintiffs and the Improper Disclosure Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).  Improper Disclosure Class members are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2).  Plaintiffs and the Improper Disclosure Class members are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

**COUNT II**
**15 U.S.C. § 1681b(b)(3)(A)**
**Failure to Provide Pre-Adverse Action Notice**
**On behalf of all Plaintiffs and the Pre-Adverse Action Notice Class**

92.     Defendant violated the FCRA by failing to provide Plaintiffs and the Pre-Adverse Action Notice Class members with a copy of the consumer report that was used to take adverse employment action against them.  *See* 15 U.S.C. § 1681b(b)(3)(A).

93.     Defendant also violated the FCRA by failing to provide Plaintiffs and the Pre-Adverse Action Notice Class members with a summary of their rights under the FCRA.  *See id.*

94.     Defendant acted willfully and in knowing or reckless disregard of its obligations and the rights of Plaintiffs and the Pre-Adverse Action Notice Class members. Defendant's willful conduct is reflected by, among other things, the fact that it violated a clear statutory mandate set forth in 15 U.S.C. § 1681b(b)(3)(A), and that Defendant certified that it would comply with 15 U.S.C. § 1681b(b)(3)(A).  Further:

(a)     The pre-adverse action provision was enacted in 1996 and has been in force since Defendant's founding;

(b)     Defendant's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute;

(c)     Despite the pellucid statutory text and there being a depth of guidance, Defendant has adopted a policy of taking adverse action

-19-

1   without giving first providing consumers with a copy of their

2   reports and a summary of their rights;

3   (d)   Defendant continues to violate the FCRA despite having been sued

4   previously for such violations; and

5   (e)   By adopting such a policy, Defendant voluntarily ran a risk of

6   violating the law substantially greater than the risk associated with

7   a reading that was merely careless.

8   95.   Plaintiffs and the Pre-Adverse Action Notice Class are entitled to statutory

9   damages of not less than $100 and not more than $1,000 for each and every one of these

10   violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A). Plaintiffs and the Pre-Adverse Action

11   Notice Class members are also entitled to punitive damages for these violations, pursuant

12   to 15 U.S.C. § 1681n(a)(2). Plaintiffs and Pre-Adverse Action Notice Class members are

13   further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. §

14   1681n(a)(3).

15   **PRAYER FOR RELIEF**

16   96.   WHEREFORE, Plaintiffs, on behalf of themselves and the Classes, pray

17   for relief as follows:

18   (a)   Determining that this action may proceed as a class action under Fed.

19   R. Civ. P. 23(b)(3);

20   (b)   Designating Plaintiffs as Class Representatives and designating

21   Plaintiffs' counsel as counsel for the Classes;

22   (c)   Issuing proper notice to the Classes at Defendant's expense;

23   (d)   Declaring that Defendant violated the FCRA;

24   (e)   Declaring that Defendant acted willfully, in knowing or reckless

25   disregard of Plaintiffs' rights and its obligations under the FCRA;

26   (f)   Awarding statutory damages and punitive damages as provided by the

27   FCRA;

28

1        (g) Awarding reasonable attorneys' fees and costs as provided by the

2             FCRA;

3        (h) Granting other and further relief, in law or equity, as this Court may

4             deem appropriate and just.

5        **<u>DEMAND FOR JURY TRIAL</u>**

6     97.    Pursuant to Fed. R. Civ. P. 38, Plaintiffs and the Classes demand a trial by

7 jury.

8

9 Dated: March 3, 2016            BERGER & MONTAGUE, P.C.

10            By:   /s/John G. Albanese

11                John G. Albanese (*pro hac vice*)

12                Attorneys for Plaintiffs and the Proposed Classes

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SECOND AMENDED COMPLAINT, Case No.3:15-cv-04052-VC